The petition for rehearing by the panel is denied.*

Alvin LOVE, Petitioner, Appellant,

v.

Norman BUTLER, Respondent, Appellee.

No. 91–1230.

United States Court of Appeals,
First Circuit.

Submitted July 15, 1991.
Decided Dec. 19, 1991.

---

Alvin Love on brief pro se.

Scott Harshbarger, Atty. Gen., and Robert N. Sikellis, Asst. Atty. Gen., on brief for respondent, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

PER CURIAM.

This is an appeal from the dismissal of a habeas corpus petition. In 1986, petitioner Alvin Love was convicted by a Massachusetts Superior Court jury of violating that state's "bail-jumping" statute. Mass. Gen.L. ch. 276, § 82A.[1] He was sentenced to a year's imprisonment, to take effect from and after the sentence then being served. In November 1988, the Massachusetts Appeals Court affirmed his conviction, and the Supreme Judicial Court denied leave for further appellate review the following month. Petitioner filed the instant petition in April 1989, alleging, *inter alia*, that the bail-jumping provision was unconstitutionally vague, and that his trial counsel had provided ineffective assistance. The district court, adopting the recommendation of a magistrate-judge, summarily dismissed the petition under Rule 4 of the Rules Governing Section 2254 Cases— which requires dismissal "[i]f it plainly appears from the face of the petition and any exhibits attached thereto that the petitioner is not entitled to relief...." We agree

---

1. This statute provides: "A person who is released by court order or other lawful authority on bail or recognizance on condition that he will appear personally at a specified time and place and who fails without sufficient excuse to so appear shall be punished...."

that such a disposition is warranted, and therefore affirm.

## I.

The following description of the factual and procedural background, none of which is in dispute, is drawn largely from the Appeals Court's decision. *Commonwealth v. Love*, 26 Mass.App.Ct. 541, 530 N.E.2d 176 (1988). Through the testimony of Robert McDade, an assistant clerk of the Superior Court, the Commonwealth established the following. Petitioner was indicted in 1985 on a charge of breaking and entering. On June 10, 1985, he was released from detention upon depositing $500 as surety and executing a standard recognizance form, which required him to appear at places and times that might be specified. The recognizance stated: "A defendant who fails without sufficient excuse to appear in court after release on bail or recognizance may be punished [stating the penalty]." Trial commenced on December 2, 1985, with petitioner in attendance. At the close of that day's proceedings, petitioner was informed that trial would continue the next day at 10:00 A.M. Petitioner failed to appear at that time. Neither defense counsel nor the prosecutor knew of his whereabouts. Petitioner was called to the bar, without response. A default issued and bail was ordered forfeited. Trial resumed the following day, with petitioner still absent, and a conviction followed.

The Commonwealth's second witness was Lieutenant Donald Whalen of the Wellesley police. He testified that, on January 30, 1986 (some two months after petitioner's disappearance), he interviewed petitioner at the Wellesley police station where the latter was being detained following a new arrest. The Commonwealth sought to inquire as to what petitioner had said during this interview, but the court (following an extensive voir dire of Lieutenant Whalen) ruled petitioner's statement inadmissible. The Commonwealth then rested. No motion for a required finding of not guilty,

*see* Mass.R.Crim.P. 25(a), was filed by defense counsel.

Petitioner then took the stand to explain the reason for his disappearance. He stated that he had believed the trial was unfair to him, for two reasons: his attorney had declined to offer a defense of "diminished capacity," and there were witnesses whom the defense had not reached in time for trial. He further explained that, under pressure of this belief, he had decided to quit the trial in mid-stream and attempt to raise money to acquire better legal representation. He first travelled to Florida, then returned and lived at various addresses until his arrest on January 30, 1986. Following petitioner's testimony, the defense rested, again without moving for a required finding of not guilty.

The trial judge instructed the jury that the Commonwealth had the burden to prove, beyond a reasonable doubt, the following: (1) that petitioner was released by court order on bail, (2) that it was a condition of his release that he appear at places and times as specified, (3) that he failed to appear at a place and time specified, and (4) that his failure to appear was without sufficient excuse. As to this last element, the judge offered no categorical definition; rather, he provided illustrative examples on either side of the line of "sufficient excuse." [2] The judge read a standard definition of duress, and left it to the jury to decide whether petitioner's explanation, if believed, would be regarded by a reasonably prudent person as a sufficient excuse for failure to appear.

Following the jury's verdict, petitioner (with new counsel) moved for postconviction relief. He there advanced the claims which are at the center of the instant petition (and which are described more fully below): unconstitutional vagueness and ineffective assistance of counsel. Although the first claim, not having been raised at trial, would ordinarily have been deemed waived, the trial court decided in its discretion to address it on the merits. The court

---

**2.** Cited as examples of a sufficient excuse were serious illness, accident, and confinement as by kidnapping. Cited as excuses that would not be

"sufficient" were simple refusal to face responsibility, intent to escape punishment for wrongdoing, and intent to frustrate justice.

denied both claims, and the Appeals Court upheld both the verdict and the denial of the motion for postconviction relief.

## II.

■ We shall address in turn each of the several claims contained in the instant petition. Petitioner's first two claims are interrelated. He argues that the bail-jumping statute is unconstitutionally vague on its face, in that it fails to define the term "sufficient excuse." And he contends that trial counsel provided ineffective assistance by failing to advance this claim by way of a pretrial motion to dismiss. These claims are presented in a curious posture. Petitioner does *not* allege that the statute is unconstitutionally vague *as applied* to him; he effectively concedes that it is not, and instead insists only that it is facially vague. And he does not dispute that the trial court and Appeals Court both addressed the vagueness issue on the merits. Instead, he complains that, due to counsel's ineffectiveness, each court conducted only an "as applied" analysis. Had counsel moved for dismissal prior to trial, the vagueness analysis necessarily would have been restricted to a facial inquiry—which, in petitioner's view, would have been resolved in his favor.

This line of reasoning falters on several grounds. First, a close reading of the trial court's post-trial memorandum indicates that it did, in fact, consider the constitutionality of the statute on its face. Rather than relying on petitioner's conduct, it upheld the statute on the basis of its language, the jury instructions, and caselaw defining the analogous circumstances in which a surety can be excused from liability for a defendant's default. The Appeals Court, in turn, addressed petitioner's facial challenge. Given these factors, any ineffectiveness arising from trial counsel's failure to advance such a challenge was obviously without prejudice. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (to make out claim of ineffective assistance, defendant must show, *inter alia,* "that the

deficient performance prejudiced the defense").

■ More important, both of these arguments fail because, as the Appeals Court properly observed, a facial challenge was inappropriate under the circumstances. It is well-established that "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988); *accord, e.g., United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *United States v. Angiulo,* 897 F.2d 1169, 1179 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Barnes,* 890 F.2d 545, 552 (1st Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). Petitioner suggests that, even when First Amendment rights are not implicated, facial challenges are also appropriate where an enactment is alleged to be "impermissibly vague in all of its applications," *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982), in the sense that "no standard of conduct is specified at all," *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Yet it is clear that such an allegation must first be considered in light of the facts of the case—i.e., on an as-applied basis. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Flipside,* 455 U.S. at 495, 102 S.Ct. at 1191–92 (footnote omitted); *accord Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."); *United States v. Doremus,* 888 F.2d 630, 634 (9th Cir.1989), *cert. de-*

*nied,* —— U.S. ——, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). Indeed, the Court in *Flipside* rejected a similar contention by noting: "Flipside's facial challenge fails because . . . the ordinance is sufficiently clear as applied to Flipside." 455 U.S. at 500, 102 S.Ct. at 1194.

Petitioner's argument fails here for the same reason. The Appeals Court, after a careful analysis, held that the statute was not unconstitutionally vague as applied to petitioner. As petitioner has not challenged this ruling in the instant proceedings, we need not engage in any extended discussion thereof. It suffices to note the following. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The Appeals Court here stated:

> As the judge instructed, the expression "without sufficient excuse" conveys the meaning of deliberate conduct contrary to that which was required—this in distinction from conduct which the actor did not will, or was unable to control. Thus the statute resembles, if, indeed, it is not equivalent to, a common kind of bail-jumping statute that speaks of "willful" failure to appear as required.

26 Mass.App.Ct. at 545, 530 N.E.2d 176 (footnote omitted). The court observed that the requirement of scienter implicit in the statute had the tendency to clarify its scope. *Id.* at 546 n. 11, 530 N.E.2d 176; *see, e.g., Flipside,* 455 U.S. at 499, 102 S.Ct. at 1193 ("a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"). And the court held that petitioner's proffered excuse—fear of an unfair trial—constituted a plainly inadequate justification for jumping bail. 26 Mass.App.Ct. at 549,

530 N.E.2d 176. Under these circumstances, we think it clear that one who decamps in the middle of a trial without notifying his counsel, who flees to another part of the country, and who resurfaces only when arrested for a new offense, "is a person who should know that [the statute's] language applies to him." *United States v. Buckalew,* 859 F.2d 1052, 1054 (1st Cir.1988); *see also United States v. Cintolo,* 818 F.2d 980, 997 (1st Cir.) ("On the record before us, there is no doubt that appellant in fact knew—or was chargeable with knowledge—that his conduct fell within the statute's proscriptions."), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987).

### III.

Petitioner's remaining claims can be more summarily addressed. He contends that his trial attorney was ineffective in failing to move for a required finding of not guilty at the close of the Commonwealth's case. Such a motion would have been successful, he insists, because the Commonwealth had offered no evidence that his failure to appear was without sufficient excuse—a necessary element of the offense. This assertion is highly doubtful,[3] and is in any event beside the point. The Appeals Court, analogizing the sufficient-excuse element to the justifications of duress and necessity, held that petitioner had "the burden of producing some evidence of a 'sufficient excuse' before the Commonwealth would become obligated to shoulder the burden of negating that excuse by proof beyond a reasonable doubt." 26 Mass.App.Ct. at 548, 530 N.E.2d 176. Accordingly, "the Commonwealth was not required to establish in its case-in-chief that the defendant acted without sufficient excuse." *Id.* The court explicitly refrained from considering the constitutionality of such a shift in the burden of persuasion, *id.* at 548 n. 17, 530 N.E.2d 176, and petitioner has not advanced any such challenge here.

---

3. As mentioned, the Commonwealth established that petitioner had absconded in the middle of trial without word to anyone and had only resurfaced following his arrest in Wellesley. This evidence, together with all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, would seem adequate to avoid a required finding of not guilty.

As any motion for a required finding of not guilty would thus have been unavailing, counsel was not ineffective in failing to file same.

■ Petitioner next challenges several aspects of the Appeals Court's decision. Although it is not clear that these claims have been exhausted, we need not address the matter inasmuch as each is patently without merit. *See, e.g., Granberry v. Greer*, 481 U.S. 129, 135 n. 7, 107 S.Ct. 1671, 1675 n. 7, 95 L.Ed.2d 119 (1987) ("it is appropriate for the court of appeals to dispose of nonmeritorious petitions without reaching the nonexhaustion issue"); *Palmariello v. Superintendent of MCI Norfolk*, 873 F.2d 491, 493 n. 1 (1st Cir.) (same), *cert. denied*, 493 U.S. 865, 110 S.Ct. 185, 107 L.Ed.2d 140 (1989). Only one of these claims, in fact, is worthy of discussion: that the court improperly relied on excluded testimony in the course of its opinion.[4] While he has not identified any specific testimony in this regard, we infer that he is complaining of the Appeals Court's having mentioned (1) that he adopted an assumed name while in Florida, and (2) that his arrest on January 30, 1986 was for a fresh breaking and entering committed that day. (The Commonwealth's state appellate brief indicates that these facts were provided by Lieutenant Whalen during his voir dire testimony; they apparently were never revealed to the jury.) The suggestion that the Appeals Court "relied on" these facts in reaching its decision is frivolous. The court mentioned them only once, during its factual description. And each reference appeared, not in the body of the decision, but in a footnote. *See id.* 26 Mass.App.Ct. at 542 n. 2, 543 n. 4, 530 N.E.2d 176. This plainly indicates that the court was aware which facts were before the jury.

■ Finally, petitioner argues that the district court erred in summarily disposing of his petition under Rule 4, without examining the trial transcript or requiring the Commonwealth to file an answer. Yet as the foregoing discussion makes clear, each of petitioner's arguments was readily susceptible to resolution without resort to the transcript. For this reason, the instant case differs from *Moran v. Vose*, 816 F.2d 35 (1st Cir.1987) (per curiam), on which petitioner relies. Moreover, unlike in *Moran*, dismissal here was not ordered "solely on the basis of the petition," *id.* at 36; accompanying the petition were the briefs of both parties to the Appeals Court, that court's decision, petitioner's application to the SJC for further appellate review, and the grand jury minutes. On a related matter, it is admittedly "somewhat anomalous," *id.*, at least on the surface, that a court would summarily dismiss a petition under Rule 4 and then proceed to grant a certificate of probable cause. *Compare Dory v. Commissioner of Correction*, 865 F.2d 44, 46 (2d Cir.1989) (per curiam) ("intrinsically contradictory") *with Johnson v. Gramley*, 929 F.2d 350, 351 (7th Cir.1991) ("The judge might think a suit frivolous, yet not be sure we would agree. After all, it is not unknown for an appellate court to disagree with a trial court's determination of frivolousness...."). Yet contrary to petitioner's suggestion, whatever inconsistency may exist in this regard provides no basis for reversal. *See, e.g., Mahoney v. Vondergritt*, 938 F.2d 1490, 1494 n. 7 (1st Cir.1991) (while summary dismissal followed by grant of CPC was "somewhat inconsistent," the "decision to invoke Rule 4 was not erroneous").

*Affirmed.*

---

4. Petitioner's other contentions in this regard are that the court erred in analyzing his vagueness challenge on an as-applied basis, and that it failed to address the second of his ineffective assistance claims. Our earlier discussion disposes of the former claim; the latter is simply mistaken.