USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________
No. 91-1230 ALVIN LOVE, Petitioner, Appellant, v. NORMAN BUTLER, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ____________________ Before Torruella, Selya and Cyr, Circuit Judges. ____________________ Alvin Love on brief pro se. Scott Harshbarger, Attorney General, and Robert N. Sikellis,
Assistant Attorney General, on brief for appellee. ____________________ ____________________ Per Curiam. This is an appeal from the dismissal of a
habeas corpus petition. In 1986, petitioner Alvin Love was
convicted by a Massachusetts Superior Court jury of violating
that state's "bail-jumping" statute. Mass. Gen. L. ch. 276, 82A. He was sentenced to a year's imprisonment, to take
effect from and after the sentence then being served. In
November 1988, the Massachusetts Appeals Court affirmed his
conviction, and the Supreme Judicial Court denied leave for
further appellate review the following month. Petitioner filed
the instant petition in April 1989, alleging, inter alia, that
the bail-jumping provision was unconstitutionally vague, and
that his trial counsel had provided ineffective assistance. The district court, adopting the recommendation of a
magistrate-judge, summarily dismissed the petition under Rule
4 of the Rules Governing Section 2254 Cases--which requires
dismissal "[i]f it plainly appears from the face of the
petition and any exhibits attached thereto that the petitioner
is not entitled to relief ...." We agree that such a
disposition is warranted, and therefore affirm. I. The following description of the factual and procedural
background, none of which is in dispute, is drawn largely from
the Appeals Court's decision. Commonwealth v. Love, 26 Mass.
App. Ct. 541 (1988). Through the testimony of Robert McDade,
an assistant clerk of the Superior Court, the Commonwealth
established the following. Petitioner was indicted in 1985 on
a charge of breaking and entering. On June 10, 1985, he was
released from detention upon depositing $500 as surety and
executing a standard recognizance form, which required him to
appear at places and times that might be specified. The
recognizance stated: "A defendant who fails without sufficient
excuse to appear in court after release on bail or recognizance
may be punished [stating the penalty]." Trial commenced on
December 2, 1985, with petitioner in attendance. At the close
of that day's proceedings, petitioner was informed that trial
would continue the next day at 10:00 A.M. Petitioner failed to
appear at that time. Neither defense counsel nor the
prosecutor knew of his whereabouts. Petitioner was called to
the bar, without response. A default issued and bail was
ordered forfeited. Trial resumed the following day, with
petitioner still absent, and a conviction followed. The Commonwealth's second witness was Lieutenant Donald
Whalen of the Wellesley police. He testified that, on January
30, 1986 (some two months after petitioner's disappearance), he
interviewed petitioner at the Wellesley police station where
the latter was being detained following a new arrest. The
Commonwealth sought to inquire as to what petitioner had said
during this interview, but the court (following an extensive
voir dire of Lieutenant Whalen) ruled petitioner's statement
inadmissible. The Commonwealth then rested. No motion for a
required finding of not guilty, see Mass. R. Crim. P. 25(a),
was filed by defense counsel. Petitioner then took the stand to explain the reason for
his disappearance. He stated that he had believed the trial
was unfair to him, for two reasons: his attorney had declined
to offer a defense of "diminished capacity," and there were
witnesses whom the defense had not reached in time for trial. He further explained that, under pressure of this belief, he
had decided to quit the trial in mid-stream and attempt to
raise money to acquire better legal representation. He first
travelled to Florida, then returned and lived at various
addresses until his arrest on January 30, 1986. Following
petitioner's testimony, the defense rested, again without
moving for a required finding of not guilty. The trial judge instructed the jury that the Commonwealth
had the burden to prove, beyond a reasonable doubt, the
following: (1) that petitioner was released by court order on
bail, (2) that it was a condition of his release that he appear
at places and times as specified, (3) that he failed to appear
at a place and time specified, and (4) that his failure to
appear was without sufficient excuse. As to this last element,
the judge offered no categorical definition; rather, he
provided illustrative examples on either side of the line of
"sufficient excuse." The judge read a standard definition of
duress, and left it to the jury to decide whether petitioner's
explanation, if believed, would be regarded by a reasonably
prudent person as a sufficient excuse for failure to appear. Following the jury's verdict, petitioner (with new
counsel) moved for postconviction relief. He there advanced
the claims which are at the center of the instant petition (and
which are described more fully below): unconstitutional
vagueness and ineffective assistance of counsel. Although the
first claim, not having been raised at trial, would ordinarily
have been deemed waived, the trial court decided in its
discretion to address it on the merits. The court denied both
claims, and the Appeals Court upheld both the verdict and the
denial of the motion for postconviction relief. II. We shall address in turn each of the several claims
contained in the instant petition. Petitioner's first two
claims are interrelated. He argues that the bail-jumping
statute is unconstitutionally vague on its face, in that it
fails to define the term "sufficient excuse." And he contends
that trial counsel provided ineffective assistance by failing
to advance this claim by way of a pretrial motion to dismiss. These claims are presented in a curious posture. Petitioner
does not allege that the statute is unconstitutionally vague as
applied to him; he effectively concedes that it is not, and
instead insists only that it is facially vague. And he does
not dispute that the trial court and Appeals Court both
addressed the vagueness issue on the merits. Instead, he
complains that, due to counsel's ineffectiveness, each court
conducted only an "as applied" analysis. Had counsel moved for
dismissal prior to trial, the vagueness analysis necessarily
would have been restricted to a facial inquiry--which, in
petitioner's view, would have been resolved in his favor. This line of reasoning falters on several grounds. First,
a close reading of the trial court's post-trial memorandum
indicates that it did, in fact, consider the constitutionality
of the statute on its face. Rather than relying on
petitioner's conduct, it upheld the statute on the basis of its
language, the jury instructions, and caselaw defining the
analogous circumstances in which a surety can be excused from
liability for a defendant's default. The Appeals Court, in
turn, addressed petitioner's facial challenge. Given these
factors, any ineffectiveness arising from trial counsel's
failure to advance such a challenge was obviously without
prejudice. See, e.g., Strickland v. Washington, 466 U.S. 668,
687 (1984) (to make out claim of ineffective assistance,
defendant must show, inter alia, "that the deficient
performance prejudiced the defense"). More important, both of these arguments fail because, as
the Appeals Court properly observed, a facial challenge was
inappropriate under the circumstances. It is well-established
that "[v]agueness challenges to statutes not threatening First
Amendment interests are examined in light of the facts of the
case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988); accord, e.g.,
United States v. Powell, 423 U.S. 87, 92 (1975); United States
v. Mazurie, 419 U.S. 544, 550 (1975); United States v. Angiulo,
897 F.2d 1169, 1179 (1st Cir.), cert. denied, 111 S. Ct. 130
(1990); United States v. Barnes, 890 F.2d 545, 552 (1st Cir.
1989), cert. denied, 110 S. Ct. 1326 (1990). Petitioner
suggests that, even when First Amendment rights are not
implicated, facial challenges are also appropriate where an
enactment is alleged to be "impermissibly vague in all of its
applications," Village of Hoffman Estates v. The Flipside,
Hoffman Estates, Inc., 455 U.S. 489, 495 (1982), in the sense
that "no standard of conduct is specified at all," Coates v.
City of Cincinnati, 402 U.S. 611, 614 (1971). Yet it is clear
that such an allegation must first be considered in light of
the facts of the case--i.e., on an as-applied basis. "A
plaintiff who engages in some conduct that is clearly
proscribed cannot complain of the vagueness of the law as
applied to the conduct of others. A court should therefore
examine the complainant's conduct before analyzing other
hypothetical applications of the law." Flipside, 455 U.S. at
495 (footnote omitted); accord Parker v. Levy, 417 U.S. 733,
756 (1974) ("One to whose conduct a statute clearly applies may
not successfully challenge it for vagueness."); United States
v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989), cert. denied,
111 S. Ct. 751 (1991). Indeed, the Court in Flipside rejected
a similar contention by noting: "Flipside's facial challenge
fails because ... the ordinance is sufficiently clear as
applied to Flipside." 455 U.S. at 500. Petitioner's argument fails here for the same reason. The
Appeals Court, after a careful analysis, held that the statute
was not unconstitutionally vague as applied to petitioner. As
petitioner has not challenged this ruling in the instant
proceedings, we need not engage in any extended discussion
thereof. It suffices to note the following. "[T]he void-for-
vagueness doctrine requires that a penal statute define the
criminal offense with sufficient definiteness that ordinary
people can understand what conduct is prohibited and in a
manner that does not encourage arbitrary and discriminatory
enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). The Appeals Court here stated: As the judge instructed, the expression "without sufficient excuse" conveys the meaning of deliberate conduct contrary to that which was required--this in distinction from conduct which the actor did not will, or was unable to control. Thus the statute resembles, if, indeed, it is not equivalent to, a common kind of bail-jumping statute that speaks of "willful" failure to appear as required.
26 Mass. App. Ct. at 545 (footnote omitted). The court
observed that the requirement of scienter implicit in the
statute had the tendency to clarify its scope. Id. at 546
n.11; see, e.g., Flipside, 455 U.S. at 499 ("a scienter
requirement may mitigate a law's vagueness, especially with
respect to the adequacy of notice to the complainant that his
conduct is proscribed"). And the court held that petitioner's
proffered excuse--fear of an unfair trial--constituted a
plainly inadequate justification for jumping bail. 26 Mass.
App. Ct. at 549. Under these circumstances, we think it clear
that one who decamps in the middle of a trial without notifying
his counsel, who flees to another part of the country, and who
resurfaces only when arrested for a new offense, "is a person
who should know that [the statute's] language applies to him." United States v. Buckalew, 859 F.2d 1052, 1054 (1st Cir. 1988);
see also United States v. Cintolo, 818 F.2d 980, 997 (1st Cir.)
("On the record before us, there is no doubt that appellant in
fact knew--or was chargeable with knowledge--that his conduct
fell within the statute's proscriptions."), cert. denied, 484
U.S. 913 (1987). III. Petitioner's remaining claims can be more summarily
addressed. He contends that his trial attorney was ineffective
in failing to move for a required finding of not guilty at the
close of the Commonwealth's case. Such a motion would have
been successful, he insists, because the Commonwealth had
offered no evidence that his failure to appear was without
sufficient excuse--a necessary element of the offense. This
assertion is highly doubtful, and is in any event beside the
point. The Appeals Court, analogizing the sufficient-excuse
element to the justifications of duress and necessity, held
that petitioner had "the burden of producing some evidence of
a 'sufficient excuse' before the Commonwealth would become
obligated to shoulder the burden of negating that excuse by
proof beyond a reasonable doubt." 26 Mass. App. Ct. at 548. Accordingly, "the Commonwealth was not required to establish in
its case-in-chief that the defendant acted without sufficient
excuse." Id. The court explicitly refrained from considering
the constitutionality of such a shift in the burden of
persuasion, id. at 548 n.17, and petitioner has not advanced
any such challenge here. As any motion for a required finding
of not guilty would thus have been unavailing, counsel was not
ineffective in failing to file same. Petitioner next challenges several aspects of the Appeals
Court's decision. Although it is not clear that these claims
have been exhausted, we need not address the matter inasmuch as
each is patently without merit. See, e.g., Granberry v. Greer,
481 U.S. 129, 135 n.7 (1987) ("it is appropriate for the court
of appeals to dispose of nonmeritorious petitions without
reaching the nonexhaustion issue"); Palmariello v.
Superintendent of MCI Norfolk, 873 F.2d 491, 493 n.1 (1st Cir.)
(same), cert. denied, 110 S. Ct. 185 (1989). Only one of these
claims, in fact, is worthy of discussion: that the court
improperly relied on excluded testimony in the course of its
opinion. While he has not identified any specific testimony
in this regard, we infer that he is complaining of the Appeals
Court's having mentioned (1) that he adopted an assumed name
while in Florida, and (2) that his arrest on January 30, 1986
was for a fresh breaking and entering committed that day. (The
Commonwealth's state appellate brief indicates that these facts
were provided by Lieutenant Whalen during his voir dire
testimony; they apparently were never revealed to the jury.) The suggestion that the Appeals Court "relied on" these facts
in reaching its decision is frivolous. The court mentioned
them only once, during its factual description. And each
reference appeared, not in the body of the decision, but in a
footnote. See id. at 542 n.2, 543 n.4. This plainly indicates
that the court was aware which facts were before the jury. Finally, petitioner argues that the district court erred
in summarily disposing of his petition under Rule 4, without
examining the trial transcript or requiring the Commonwealth to
file an answer. Yet as the foregoing discussion makes clear,
each of petitioner's arguments was readily susceptible to
resolution without resort to the transcript. For this reason,
the instant case differs from Moran v. Vose, 816 F.2d 35 (1st
Cir. 1987) (per curiam), on which petitioner relies. Moreover,
unlike in Moran, dismissal here was not ordered "solely on the
basis of the petition," id. at 36; accompanying the petition
were the briefs of both parties to the Appeals Court, that
court's decision, petitioner's application to the SJC for
further appellate review, and the grand jury minutes. On a
related matter, it is admittedly "somewhat anomalous," id., at
least on the surface, that a court would summarily dismiss a
petition under Rule 4 and then proceed to grant a certificate
of probable cause. Compare Dory v. Commissioner of Correction,
865 F.2d 44, 46 (2d Cir. 1989) (per curiam) ("intrinsically
contradictory") with Johnson v. Gramley, 929 F.2d 350, 351 (7th
Cir. 1991) ("The judge might think a suit frivolous, yet not be
sure we would agree. After all, it is not unknown for an
appellate court to disagree with a trial court's determination
of frivolousness ...."). Yet contrary to petitioner's
suggestion, whatever inconsistency may exist in this regard
provides no basis for reversal. See, e.g., Mahoney v.
Vondergritt, 938 F.2d 1490, 1494 n.7 (1st Cir. 1991) (while
summary dismissal followed by grant of CPC was "somewhat
inconsistent," the "decision to invoke Rule 4 was not
erroneous"). Affirmed.