**[NOT FOR PUBLICATION — NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
## For the First Circuit

No. 99-2118

KURT L. HUENEFELD,

Petitioner,

v.

MICHAEL MALONEY, ETC.,

Respondent.

ON PETITION FOR A CERTIFICATE OF APPEALABILITY
FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Boudin and Lynch,

Circuit Judges.

Kurt L. Huenefeld pro se on petition.

March 15, 2001

**Per Curiam.** Kurt Huenefeld, a state prisoner sentenced to life imprisonment, petitions for a certificate of appealability (COA) so that he may appeal the district court's denial of his application for a writ of habeas corpus. See 28 U.S.C. § 2253. This application is the progeny of several earlier affirmations of the petitioner's 1983 conviction following a jury trial in a Massachusetts state court on charges of second-degree murder, burglary, and armed assault. In the first instance, the Massachusetts Appeals Court upheld the conviction and the Supreme Judicial Court (SJC) denied further appellate review. Commonwealth v. Huenefeld, 475 N.E.2d 439 (Mass. App. Ct. 1985), rev. denied, 478 N.E.2d 1274 (Mass. 1985). The petitioner thereafter moved unsuccessfully for a new trial. That denial likewise was affirmed. Commonwealth v. Huenefeld, 614 N.E.2d 999 (Mass. App. Ct. 1993), rev. denied, 687 N.E.2d 651 (Mass. 1997).

The petitioner then sought federal habeas relief. See 28 U.S.C. § 2254. The United States District Court for the District of Massachusetts dismissed this "mixed" application for failure to exhaust state remedies. See Rose v. Lundy, 455 U.S. 509, 510 (1982). The petitioner returned to the state courts and filed a second new trial motion. The superior court rebuffed him and the ruling withstood direct attack. See

-2-

Commonwealth v. Huenefeld, 687 N.E.2d 651 (Mass. App. Ct. 1997), rev. denied, 691 N.E.2d 581 (Mass. 1998).

On March 3, 1998, the petitioner reapplied for a writ of habeas corpus. The named respondent, a state correctional official, moved to dismiss. See Rule 4, Rules Governing Habeas Corpus, 28 foll. § 2254. A magistrate judge recommended granting the motion, and the district court adopted the report in full. See Huenefeld v. Maloney, 62 F. Supp. 2d 211 (D. Mass. 1999) (reproducing text of magistrate's report and recommendation). Consequently, the court dismissed the habeas application. It thereafter refused to issue a COA. The petitioner renews his request in this court. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1).

A provision in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) directs federal courts to deny a state prisoner's application for a writ of habeas corpus "unless the underlying state adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). Carrying out this directive requires a two-step analysis:

> First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is 'contrary to' the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court takes the second step. At this stage, the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

O'Brien v. Dubois, 145 F.3d 16, 24 (1st Cir. 1998); accord Williams v. Taylor, 529 U.S. 362, 408 (2000); Williams v. Matesanz, 230 F.3d 421, 424 (1st Cir. 2000).

This standard informs the showing that is necessary to obtain a COA.

> The AEDPA predicates the very issuance of a COA — without which "an appeal may not be taken to the court of appeals," 28 U.S.C. § 2253(c)(1) — on whether an "applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). A habeas petitioner who fails to demonstrate that his claims satisfy the substantial showing standard may not appeal the denial of habeas corpus at all.

Bui v. DiPaolo, 170 F.3d 232, 236 (1st Cir. 1999). Moreover, "the necessity for a substantial showing extends independently

to each and every issue raised by a habeas petitioner."  Id.
The petitioner fails to make the requisite showing.

We need not tarry.  The facts of the underlying case have been chronicled in several rescripts, e.g., Huenefeld, 62 F. Supp. 2d at 212-18, and we need not rehearse them here.  A careful review of the relevant state court decisions reveals them to be fully consistent with Supreme Court case law.  The only conceivable question, then, is whether the state courts unreasonably applied that law.  The petitioner offers no convincing reason why we should answer that question in the affirmative.  We allude briefly to his principal points.

1.  The petitioner objects vociferously to an analogy used by the trial judge while explaining the drawing of inferences, asserting that the instruction allowed the jury to infer facts upon a mere possibility.[1]  Having reviewed the

---

[1]The parties agree that the challenged instruction reads:

Suppose you are driving out the Concord Turnpike out to Arlington or Lexington early in the morning, and you see a guardrail has been completely broken through, and under the guardrail you see some tracks. They look like fresh tracks.  It's reasonable to infer that an automobile went through the guardrail.  You may infer that we went through recently.  If there are tire marks on the street just before it, you may infer that it was an automobile from their width and not a truck.  You may, you may not.  If there was not tire marks, you may infer that he fell asleep, didn't hit his brakes before he went over.  You may not infer that too.  It's entirely up to you.  You may say he

-5-

instruction in light of the charge as a whole, <u>Cupp</u> v. <u>Naughten</u>, 414 U.S. 141, 146-47 (1973), we are satisfied that no reasonable juror would have interpreted it as a license to indulge in speculative inferences. The trial judge's final statement — that "the inferences you make must be based upon the facts that you determine to be the truth in this trial" — renders this conclusion unavoidable. On this point, then, the petitioner has not made a substantial showing of the abridgement of a constitutional right.[2]

2. The petitioner claims that the trial court erred in requiring the parties to submit a joint stipulation as to the testimony of the chemist who performed serological examinations on relevant blood samples. According to the petitioner, the trial court should have insisted that the chemist testify in

---

tried to avoid something, or he just went over. You can get into inferences — become very speculative, you can come to inferences that are very populous [sic], but the inferences you make must be based upon the facts that you determine to be the truth in this trial.

[2]The parties also agree that the trial judge made a subsequent reference to "imaginary doubt." That allusion, while better left unsaid, does not change the decisional calculus. As stated in an unpublished appellate rescript, this locution was "merely an isolated phrase couched within four pages of an otherwise proper instruction that adequately and repeatedly emphasized the Commonwealth's burden to prove each and every element of the offense beyond a reasonable doubt." <u>Huenefeld</u>, No. 97-P-1059, slip op. at Add. 2.11 (Mass. App. Ct. Nov. 20, 1997) (unpublished).

person.  The state courts rejected this argument, e.g.,
Huenefeld, 610 N.E.2d at 347, and so do we.

Unlike Washington v. Texas, 388 U.S. 14 (1967), this
case does not involve the absolute exclusion of a witness's
testimony, but, rather, the trial court's exercise of its wide
discretion over the mode and manner of presentation of proof.
So viewed, there is no substantial showing of a nascent
constitutional violation.

3.  The petitioner calumnizes the trial judge for
allowing into evidence a pair of gray corduroy pants stained
with occult blood — pants that the petitioner was wearing at the
time of his arrest — and thereafter denying the petitioner's
motion to strike the exhibit.  See Huenefeld, 610 N.E.2d at 347
(discussing issue and concluding that any error was harmless).
Since it cannot plausibly be said that these rulings, whether
right or wrong as a matter of evidence, so infused the trial
with unfairness as to work a denial of due process, the
petitioner's constitutional rights are not implicated.  See
Puleio v. Vose, 830 F.2d 1197, 1204 (1st Cir. 1987) (holding
that garden-variety errors of state law do not warrant federal
habeas relief).

4.  The petitioner asserts that his conviction was
obtained through the use of false evidence.  The prosecution, he

says, culpably failed to correct false testimony, and the trial court improperly admitted testimony lacking in veracity.[3] See Huenefeld, 610 N.E.2d at 345 (discussing this evidence).

A criminal defendant has a constitutional right to a fair trial, but not a perfect one. United States v. Hasting, 461 U.S. 499, 506-07 (1983); Lutwak v. United States, 344 U.S. 604, 619 (1953). The inconsistencies that the petitioner cites, unaccompanied by any fact-specific proffer indicating that the prosecution suborned perjury or knowingly purposed to introduce false testimony, simply do not sink to the level that would be needed for a substantial showing that a constitutional violation had occurred. See Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Verser, 916 F.2d 1268, 1271 (7th Cir. 1990); United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987).

5. The petitioner launches a volley of claims aimed at allegedly offensive arguments made by the prosecutor. It is well-established that improper prosecutorial comments constitute constitutional error only if those comments "so infected the

---

[3]These assertions revolve around (1) testimony of Dr. Katsas, a pathologist, who apparently testified, in seeming contravention of his autopsy report, that the decedent's blood tested negative for cocaine; and (2) testimony incorrectly identifying the precise origin of a syringe that tested positive for cocaine (the syringe had been found in a trash barrel outside the petitioner's house, not — as a police witness said — on a nightstand in the petitioner's bedroom).

trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). No useful purpose would be served by enumerating the statements that the appellant decries. It suffices to say that, evaluating them within the context of the case, see United States v. Young, 470 U.S. 1, 11-12 (1985), we discern no substantial showing of constitutional error.

6. The petitioner asseverates that he was denied effective assistance of counsel during both trial and appeal. In Strickland v. Washington, 466 U.S. 688 (1984), the Supreme Court elucidated a two-part test to guide courts in determining ineffective assistance claims: the petitioner must demonstrate both that his lawyer's performance was deficient, and that this deficient performance prejudiced the defense. Id. at 687.

As to the efforts of trial counsel, the Appeals Court found no "showing of how the [petitioner] was prejudiced." Huenefeld, 610 N.E.2d at 345. In his habeas papers, the petitioner has not filled that void. Since it is the petitioner's burden to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, this omission defeats his claim.

The petitioner's allegation that he was deprived of effective appellate counsel fares no better. Specifically, the petitioner charges that his appellate lawyer failed to meet with him prior to filing his brief, or to provide him access to some documents, or to raise certain claims on appeal.[4] But the petitioner has neither established a causal link between these charges and the affirmance of his conviction nor identified any omitted argument that might conceivably have turned the tide. Accordingly, the petitioner has fallen well short of a substantial showing of the abridgement of a constitutional right. See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).

7. The petitioner makes an overarching argument that the district court erred in dismissing his habeas application without first procuring and pondering a complete transcript of his trial. The district court acted, however, under Rule 4 of the Rules Governing Section 2254 Cases — a rule that authorizes dismissal "if it plainly appears from the face of the petition and any exhibits attached thereto that the petitioner is not entitled to relief." Where, as here, a petitioner's claims

_____

[4]The petitioner also suggests that his appellate attorney deprived him of the opportunity to file a so-called Moffett brief. See Commonwealth v. Moffett, 418 N.E.2d 585, 589 (Mass. 1981). Moffett articulates a rule of state law, and failure to comply with that rule does not raise a claim cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

render such a disposition appropriate, a federal habeas court need not examine the complete trial transcript.

A case directly on point is <u>Love</u> v. <u>Butler</u>, 952 F.2d 10 (1st Cir. 1991) (per curiam). There, the district court had before it the parties' briefs, the relevant state court decisions, a copy of an unsuccessful application for further appellate review, and certain grand jury minutes. <u>Id.</u> at 15. We held that "each of petitioner's arguments was readily susceptible to resolution without resort to the transcript." <u>Id.</u> Accordingly, we affirmed the district court's summary dismissal of the habeas application. <u>Id.</u>

The case at bar is on all fours with <u>Love</u>. Here, the district court had before it much the same type of documentation as mentioned in <u>Love</u>. Moreover, the parties were in apparent agreement as to the critical trial events (e.g., the contents of the jury instructions, the stipulation proffered in lieu of the chemist's testimony, the inconsistencies in Dr. Katsas's account and those pertaining to the origins of the syringe, the prosecutor's closing comments). The petitioner failed to advance any argument that, for proper resolution, required the district court to go beyond these materials and refer to the unexpurgated trial transcript. Under the circumstances, we reject this assignment of error.

We need go no further.[5]  To the extent that the petitioner raises other claims, they are baseless and may be dismissed without further comment.  The short of it is that the petitioner has not made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Consequently, we deny his application for a COA.

**The petitioner's application for a COA is denied and this proceeding is terminated**.

---

[5]The petitioner also has moved for the appointment of counsel.  We deny the motion.  <u>See</u> <u>Dellenbach</u> v. <u>Hanks</u>, 76 F.3d 820, 823 (7th Cir. 1996) (stating that "an indigent civil litigant in federal court has no constitutional or statutory right to the appointment of counsel, even if he is challenging a criminal conviction as by a proceeding . . . for habeas corpus").